STATE *vs.* VINCENT R. BROWN.

MAY 7, 1963.

PRESENT: Condon, C. J., Roberts, Paolino and Powers, JJ.

Powers, J.  This is a criminal indictment charging the defendant with armed robbery.  It was tried to a superior court justice sitting with a jury and resulted in the defendant's conviction.  The case is before us on his bill of exceptions, but he presses only his exception to a certain evidentiary ruling and to the denial of his motion for a new trial. His other exceptions are expressly waived.

The evidence establishes that on the evening of April 19, 1959 Turner Buchanan, a merchant seaman, was a patron of the Celebrity Club, a nightclub then located on Randall street in the city of Providence.  Sometime after he entered the establishment Buchanan was joined by a young woman, Iona M. Spell, previously unknown to him.

During the course of the evening Miss Spell left Buchanan for short periods and during one of these occasions she accosted defendant and George Mack who were seated at a table in the club and engaged them in a conversation, the subject of which is material to the issues raised by defendant.

At approximately 9 p.m. Buchanan was induced to escort Miss Spell to her home, which she had assured him was within a short walking distance. In point of fact she had misrepresented herself and the location of her home, there being little doubt that she led him to the scene of the robbery. In any event, when she and Buchanan reached a doorway on a darkened street within hailing distance of the club, two men lurking in the doorway jumped Buchanan, administered a severe beating and relieved him of his wallet. Abandoned by his assailants and by his female companion, Buchanan made his way back to the Celebrity Club where, observing his condition, a police officer had him taken to Rhode Island Hospital.

The following day a police officer called on Buchanan at the hospital, told him they had recovered his wallet and papers, and further stated they had taken into custody one of the men who had robbed him. Although Buchanan had given no description of his assailants, other than to describe one as "small" and the other as "large," he identified defendant as one of them when the latter was confronted by him in the hospital.

There appears to be some question as to whether Buchanan was first told that defendant was one of the two assailants or whether, at such confrontation, the police officer asked Buchanan if defendant was one of them. In any event, Buchanan doggedly stuck to his identification of defendant. The account of the incident related by the complaining witness was such as to warrant the jury in accepting his statements: "I looked at them long enough to recog-

nize them. I never will forget their faces, sir, from the beating I took. I never will forget them."

George Mack, serving a five-year prison term as the other assailant, testified on behalf of defendant. He acknowledged that on the evening in question he was seated with defendant at the Celebrity Club and that the latter accompanied him as far as the door when he, Mack, left the premises shortly after 9 p.m. He insisted, however, that another known to him only by the nickname of Hannibal was his accomplice in robbing the complaining witness. Further, he admitted that while seated with defendant the young woman identified as Miss Spell came over to their table and made some remarks to defendant. It was his testimony, however, that he did not overhear what passed between defendant and the young woman.

It was at this point that the assistant attorney general, referring to an interrogation of Mack by the police on the day after the robbery, asked him: "Do you recall being asked back on April 20th of 1959 in the office of the Detective Division of the Providence Police with reference to Iona Mae Spell, this question: 'Did she have any conversation with you at the table?' Answer: 'Not with me. She told Vinnie that the man had some money.' "

The defendant moved that the question be stricken on the ground that it was hearsay. The trial justice denied the motion on the ground that the question was admissible as laying the foundation for introduction of a prior inconsistent statement. It is to this ruling that defendant presses his exception before us.

The record discloses that the question and answer which the trial justice refused to strike were read to the witness from a transcript taken by William Creegan of the Providence police department. The trial justice, in denying defendant's motion, apparently was under the impression that such transcript was to be introduced and that the question

directed to the witness was preliminary thereto. However, in other particulars it was extremely prejudicial to defendant and for that reason never became a part of the record. It further appears that the state never intended to offer the transcript, but was using it simply as a memorandum from which to question the witness in establishing a prior inconsistent statement. The record also discloses that after some deliberation the jury returned to inquire whether they might have access to the transcript.

In his charge the trial justice had instructed the jury that a witness' credibility may be impeached by prior inconsistent statements. When their request for the transcript was made, he referred their attention to his original charge on this point. He advised them further that they could not see the transcript because it was not a part of the record for the reason that it contained other material which would not be relevant or admissible. No exception was taken to either charge.

The defendant contends that since the transcript never became part of the evidence it was error for the trial justice to deny the motion.

There is no merit in this contention since, although the trial justice may have misconceived the nature of the interrogation at the moment of inquiry, it was admissible as a prior inconsistent statement in any event. That the cross-examiner referred to what was nothing more than notes, in the posture in which the transcript was used, did not make inadmissible that which would have been admissible if asked without the assistance of said notes. It is well settled that prior inconsistent statements made by a witness may be shown to impeach credibility. *Bothwell* v. *Boston Elevated Ry.*, 215 Mass. 467, and *State* v. *Volpe*, 113 Conn. 288.

The defendant further contends, however, that it was error to have permitted counsel for the state to read from the transcript without first offering it to the witness for

identification. It was neither contended nor suggested that the transcript in question was in the handwriting of the witness Mack, in which case he would have been entitled to examine it.

The defendant argues forcibly, however, that permitting the question and answer to stand was prejudicial in that it was essential to the proving of a motive for the robbery. There is no merit in this contention. Motive is not an element which must be proved by the state. See 14 Am. Jur., Criminal Law, §27, p. 786. Although establishing a motive for the commission of certain offenses may be of assistance to the prosecuting authorities in the investigation of a crime for which there appears to be no motive, robbery is not among such offenses. The motive in such an offense is self-explanatory.

The defendant's exception to the evidentiary ruling by the trial justice is therefore overruled.

It is conceded by the defendant that if he cannot prevail on this exception, his exception to the denial of his motion for a new trial is without merit. Therefore no purpose would be served in passing thereon.

The defendant's exceptions are overruled, and the case is remitted to the superior court for further proceedings.

### ON MOTION FOR REARGUMENT.

#### JUNE 3, 1963.

PER CURIAM. After our decision in the above case the defendant asked for and received permission to file a motion for reargument. Pursuant thereto he has filed such a motion, setting out therein certain reasons on which he bases his contention that justice requires a reargument of the case. We have carefully considered those reasons and we are of the opinion that they are without merit.

In support of his motion, defendant contends that we overlooked the holding of this court in *Renault* v. *John*

*Hancock Mutual Life Ins. Co.*, 92 R. I. 164, 167 A.2d 239, wherein we found that the denial of the defendant's motion for a mistrial was prejudicial.

He argues that the rationale of this court in reaching its decision was premised on the proposition that if prejudice exists it is reversible error without regard to the degree of prejudice. We are substantially in accord with this proposition. But defendant goes further and equates all error with prejudice. This presupposes that error and prejudice are necessarily synonymous. Such, however, is not the rule. See *Marley* v. *Providence Journal Co.*, 86 R. I. 229. In *Marley* we found the denial of the motion to be prejudicial; hence, reversible error. In the case at bar, however, we hold the ruling of the trial justice, if error, not to be prejudicial; hence, not reversible.

In the instant case we clearly implied, and we now hold, that although the trial justice may have misconceived the purpose for which a transcript was used, such misconception was not prejudicial to the defendant. Our decision in the *Renault* case is readily distinguishable from the case at bar; therefore, it is not in point.

Motion denied.

*J. Joseph Nugent,* Attorney General, *Corinne P. Grande,* Special Counsel, for State.

*Leo Patrick McGowan,* Public Defender, for defendant.