STATE

v.

Michael JACKSON.

No. 89–339–C.A.

Supreme Court of Rhode Island.

March 7, 1990.

---

James E. O'Neil, Atty. Gen., Steven D. Murray, Sp. Asst. Atty. Gen., Jeffrey J. Greer, Asst. Atty. Gen., for plaintiff.

Richard Casparian, Public Defender, Paula Rosin, Barbara Hurst, Asst. Public Defenders, for defendant.

## OPINION

**PER CURIAM.**

This matter was before the Supreme Court pursuant to an order issued to the defendant, Michael Jackson, to appear and show cause why his appeal should not be summarily denied and dismissed. After reviewing the memoranda of the parties and listening to the arguments of counsel, we find that cause has not been shown. However, we write to address briefly the issues raised by the defendant.

The facts relevant to this appeal are as follows. On January 24, 1986, the apartment of James A. Tollefson (Tollefson) was entered into unlawfully. Although no one was seen entering or leaving the premises, Providence Police Detective Walter D. Williams (Detective Williams) was able to obtain several latent fingerprints from a stereo cabinet and from some broken glass found at the point of unlawful entry. With the aid of these fingerprints, the Providence police arrested defendant Michael Jackson.

A jury trial took place January 18, 1989. After being qualified as an expert witness in the field of fingerprint analysis, Detective Williams testified that the latent prints found at Tollefson's apartment positively matched those inked prints of defendant that were on file with the Providence police department. At the completion of the trial the jury found defendant guilty of intent to commit larceny, and the trial justice sentenced him to seven years at the Adult Correctional Institutions, with five years suspended and five years' probation.

The defendant contends primarily that the latent fingerprints removed from the crime scene were compared to inked fingerprints that were on file with the Providence police in violation of G.L.1956 (1981 Reenactment) § 12–1–12, as amended by P.L. 1984, ch. 341, § 2.[1] This statute provides generally for the destruction of identification records, such as fingerprints, of any person acquitted or otherwise exonerated from the crime charged. The defendant on appeal directs us to 1981 and 1985 criminal charges that were subsequently dismissed

---

1. General Laws 1956 (1981 Reenactment) § 12–1–12, as amended by P.L.1984, ch. 341, § 2 provides as follows:

    "Destruction of records of persons acquitted. —Any fingerprint, photograph, physical measurements or other record of identification, heretofore or hereafter taken by or under the direction of the attorney general, the superintendent of state police, the member or members of the police department of any city or town or any other officer authorized by this chapter to take the same, of a person under arrest, prior to the final conviction of such person for the offense then charged, shall be destroyed by the office or department having the custody or possession thereof within forty-five (45) days after said acquittal or other exoneration if such person is acquitted or otherwise exonerated from the offense with which he is charged, provided, that such person shall not have been previously convicted of any offense involving moral turpitude. Any person who shall violate any provision of this section shall be fined not exceeding one hundred dollars ($100)."

and asserts that the identification records from those cases were inadmissible under § 12–1–12.

■■ Upon a careful examination of the record we find that the latent fingerprints removed from the crime scene were indeed compared to inked prints retained by the Providence police department as a result of a 1981 charge against defendant that was subsequently dismissed. Therefore, under § 12–1–12 these particular prints should have been destroyed. As we shall explain, however, such a factor is insufficient to warrant a reversal of defendant's conviction.

The existence of error during the course of a criminal trial sometimes requires the reversal of a defendant's conviction. *State v. Brown*, 96 R.I. 236, 242, 191 A.2d 353, 354 (1963); *see also State v. O'Brien*, 122 R.I. 749, 756, 412 A.2d 231, 235 (1980). In order for us to reverse on the basis of an error occurring during the course of a trial, however, such an error must rise to the level of prejudice to a defendant. *Brown*, 96 R.I. at 242, 191 A.2d at 354. When the rights of the defendant are not prejudiced, such an error is said to be harmless.

The state's use of inked fingerprints on file in violation of § 12–1–12 is just such an error. The defendant was arrested in 1982 and 1985 for unrelated incidents and pleaded nolo contendere in both instances. As a result of these two prior incidents, the Providence police properly retained inked fingerprints of defendant. As we have held previously, a plea of nolo contendere does not constitute "exoneration" under § 12–1–12, and therefore, records obtained as a result of such a plea need not be destroyed. *State v. Olink*, 507 A.2d 443, 446 (R.I.1986). Therefore, defendant's inked prints would still have been readily available to the state for comparison even if the 1981 prints in question had been destroyed as required by the statute.

The defendant, however, directs us to the Federal District Court decision of *Coalition of Black Leadership v. Doorley*, 349 F.Supp. 127 (D.R.I.1972). In *Coalition of Black Leadership*, the Federal Court considered § 12–1–12 in the context of a civil rights' action. The District Court held that the $100 fine imposed on persons violating the provisions of § 12–1–12, as it then existed, was not the exclusive remedy to those whose records were kept on file. 349 F.Supp. at 130. The District Court, however, went even further and, in effect, created an exclusionary rule barring admissibility of such records. *Id.* at 130–31.

Today we decline to follow the holding of the Federal District Court in *Coalition of Black Leadership*. The United States Supreme Court in *United States v. Payner*, 447 U.S. 727, 100 S.Ct. 2439, 65 L.Ed.2d 468 (1980), rejected the proposition that a Federal District Court had the power to create an exclusionary rule (not authorized by the Fourth Amendment) in the exercise of its supervisory power over Internal Revenue officials in the federal system. A fortiori a Federal District Court has no power to create an exclusionary rule based upon a Rhode Island statute that in itself provides no such exclusionary rule. This court in the exercise of its constitutional supervisory power over all trial courts undoubtedly has such power. However, as the United States Supreme Court points out in *Payner*, this power should be exercised with great restraint after balancing carefully the societal interests involved. We believe that an exclusionary rule is strong medicine indeed since it deprives the trier of fact in many instances of highly relevant and reliable evidence. We believe that the General Assembly of Rhode Island is quite capable of establishing an exclusionary rule when it desires to do so. *See* G.L.1956 (1985 Reenactment) § 9–19–25. The statute under consideration here does not create an exclusionary rule but provides for a fine of $100. We decline to exercise our supervisory function to create an exclusionary rule where the Legislature has seen fit not to do so.

■■ Finally the defendant contends that fingerprint evidence by itself is insufficient to support a conviction. In *State v. Giordano*, 440 A.2d 742, 746–47 (R.I.1982), however, we found that circumstantial evidence, including fingerprinting evidence,

was sufficient to sustain a conviction. Therefore, this contention is without merit.

For the reasons stated, the defendant's appeal is denied and dismissed and the judgment of the Superior Court is affirmed.